UNITED STATES BANKRUPTCY COURT    **FOR PUBLICATION**
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                        Case No. 03-26651-608

    MICHELE BRUNO,                       Chapter 7

                        Debtor.
-------------------------------------------------------------x

## DECISION

Richard J. McCord, Esq.                    John H. Shields, Esq.
Certilman Balin Adler & Hyman        97-45 Queens Boulevard
90 Merrick Avenue                           Suite 1116
East Meadow, New York 11554          Rego Park, New York 11374

Breadbar Garfield & Schmelkin
11 Park Place
New York, New York 10007

CARLA E. CRAIG
United States Bankruptcy Judge

1

This matter comes before this Court on the motion of Richard J. McCord, the chapter 7 trustee (the "Trustee"), to pay the law offices of Jeffery S. Lisabeth (the "Lisabeth Firm") the full contingency fee earned in connection with the settlement of a personal injury action on behalf of the Debtor's estate. Breadbar, Garfield and Schmelkin ("BG&S") has objected to the payment of the full contingency fee to the Lisabeth Firm, asserting that it performed a substantial amount of the work required in preparing the personal injury action for trial, and that it therefore has a charging lien pursuant to §475 of the New York Judiciary Law. BG&S is requesting 75% of the contingency fee earned by the settlement.

The Trustee asserts that BG&S is not entitled to any award of fees for services rendered on behalf of the estate or rendered to the Debtor prior to the bankruptcy filing because BG&S (a) was not in the employ of the Trustee when the case was settled, (b) failed to disclose a material conflict of interest as required by Federal Rules of Bankruptcy Procedure 2014, and (c) violated the New York Code of Professional Responsibility in connection with its pre and post-representation of the Debtor by undertaking to represent two clients with differing interests in the same matter. An evidentiary hearing was held January 31, 2005.

For the reasons set forth below, BG&S's objection is overruled and the Trustee's motion to pay the full contingency fee to the Lisabeth Firm is granted.

## Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 11 U.S.C. §§ 1334(b) and 157(b)(2) and the Eastern District of New York standing order of reference dated August 28, 1986. This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Fed. R. Bankr. P. 7052.

Facts

On December 15, 2003, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "Code"). At the initial §341 meeting of creditors, the Debtor advised the Trustee that she had a pending personal injury action. The Debtor and her son were passengers in a car driven by Robert Sabatino that was involved in an automobile accident on March 29, 2000. At the time of the Debtor's bankruptcy filing she was represented by BG&S.

After consulting with BG&S, the Trustee made a motion to retain the firm as the estate's personal injury counsel. John Shields of BG&S submitted an affidavit in support of the Trustee's retention application in which he affirmed that BG&S's representation of the Debtor's estate did not create a conflict of interest and that the firm held no interest adverse to the estate. This Court approved BG&S's retention pursuant to an Order dated February 4, 2004.

On August 12, 2004, over 6 months after BG&S submitted their affidavit in support of the Trustee's retention application, Martin Garfield, Esq., a partner at BG&S, sent a letter to the Trustee advising him that BG&S had represented Mr. Sabatino, the driver of the car, in the same personal injury action and therefore did have a conflict of interest with the Debtor's estate. As a result of this conflict of interest, BG&S withdrew as the Trustee's counsel.

After reviewing Mr. Garfield's letter, the Trustee immediately retained the Lisabeth Firm to represent the estate in the Debtor's personal injury action. On October 21, 2004, this Court issued an Order approving the substitution of the Lisabeth Firm for BG&S, without objection. The Lisabeth Firm conducted the trial of the Debtor's personal injury action and, prior to the jury returning a verdict, accepted an offer on behalf of the Debtor's estate to settle the case for $300,000.

On November 9, 2004, the Trustee made a motion to pay the Lisabeth Firm fees and expenses in connection with its representation of the estate in the Debtor's personal injury action. BG&S objected to the Trustee's motion, asserting that it had a charging lien for services rendered on behalf of the Debtor pre-petition and that its failure to disclose its prior representation of Mr. Sabatino was a harmless error that should not disqualify it from participating in a portion of the contingency fee earned by the settlement of the Debtor's personal injury action.

### Discussion

Bankruptcy courts in New York apply New York's Code of Professional Responsibility to ethical disputes. Kittay v. Kornstein, 230 F.3d 531, 538 (2d Cir. 2000), citing In re Allboro Waterproofing Corp., 224 B.R. 286, 291 n.3 (Bankr. E.D.N.Y. 1998); In re Caldor, Inc., 193 B.R. 165, 178 (Bankr. S.D.N.Y. 1996). Pursuant to local rules, attorneys must read and become familiar with the Code of Professional Responsibility before they may be admitted to practice in this district. In re Allboro Waterproofing Corp., 224 B.R. at 291 n.3, citing S.D.N.Y. & E.D.N.Y. L. Civ. R. 1.3(a); E.D.N.Y. LBR 2090-1(a).

"Under the New York rules of professional conduct, a lawyer generally cannot simultaneously serve clients with conflicting interests." Kittay v. Kornstein, 230 F.3d at 537. Disciplinary Rule ("DR") 5-105 (a) and (b) forbid an attorney "from commencing or continuing simultaneous representation of two or more clients if his exercise of independent professional judgment on behalf of either would likely be 'adversely affected,' or where the dual representation would likely involve the representation of 'differing interests.'" In re Granite Partners, L.P., 219

4

B.R. 22, 34 (Bankr. S.D.N.Y. 1998); N.Y. Comp. Codes R. & Regs. tit. 22, §1200.24(2005).[1]

"Differing interests include every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." 22 NYCRR § 1200.1.

DR 5-105(c) contains an exception to the rule that an attorney may not represent clients with differing interests:

> In the situations covered by subdivisions (a) and (b) of this section, a lawyer may represent multiple clients if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation after full disclosure of the implementations [sic] of the simultaneous representation and the advantages and risks involved.

Critical to the application of DR-105(c) is that the clients give informed consent to the multiple representation. The issue, therefore, is whether Mr. Sabatino and the Debtor had "differing interests" while they were both represented by BG&S and, if so, whether BG&S could have competently represented both Mr. Sabatino and the Debtor, and whether they provided BG&S with their informed consent to the dual representation.

It is clear that Mr. Sabatino and the Debtor had differing interests from the beginning of the representation. It is well settled that "[a] passenger will almost always be advised to assert claims against all other drivers, including the passenger's driver." Shaikh et al. v. Waiters, 185 Misc 2d 52, 54; 710 N.Y.S.2d 873, 875 (Sup. Ct. Nassau Cty 2000) (citation omitted) (holding

---

[1] The Disciplinary Rules of the New York Code of Professional Responsibility "are mandatory in character." N.Y. Code of Professional Responsibility Preliminary Statement, reprinted in N.Y. JUD. LAW APP. (McKinney 2005). They "state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." Id.

that a lawyer representing both passenger and driver incurs a substantial risk of a disqualifying conflict of interest).

In Pessoni v. Rabkin, 220 A.D.2d 732; 633 N.Y.S.2d 338 (2d. Dept. 1995), a case analogous to this matter, an attorney represented the driver of an automobile involved in a collision as well as the driver's wife and children, who had been passengers. After the driver's wife and children obtained another lawyer, the court denied a motion by their original attorney for a hearing to determine his quantum meruit share of attorney's fees generated by the settlement of their claims, holding the attorney should have declined to represent the driver, wife and children in the first instance. Id. at 338-339. The court held that the multiple representation of a plaintiff driver and a plaintiff passenger amounts to a violation of New York Code of Professional Responsibility DR 5-105 (a). Id. at 338-339, citing 22 NYCRR 1200.24 [a]. As the Debtor sued Mr. Sabatino, it is clear that they, like the driver and passengers in Pessoni, had "differing interests."

Nor may BG&S rely on DR 5-105(c). BG&S asserts that during the course of their simultaneous representation of Mr. Sabatino and the Debtor they did not perform work that was adversarial in nature; that they merely filed "no fault" applications on behalf of both parties. This does not establish that BG&S satisfied the disinterested lawyer test under DR 5-105(c). At trial, Mr. Sabatino testified that in May of 2000, an attorney at BG&S advised him that his case would need to be "split" and gave Mr. Sabatino a business card for the law firm of Lieber and Gary. Attorneys from Lieber and Gary represented Mr. Sabatino going forward.

BG&S's continued representation of the Debtor violated their obligation to represent Mr. Sabatino with undivided loyalty. DR 5-105 forbids the concurrent or subsequent acceptance of

6

retainers or employment from others in matters adversely affecting any interest of a former client in the same matter. Cardinale, et al. v. Golinello, et al., 43 N.Y.2d 288, 296; 372 N.E.2d 26, 30 (1977) (citation omitted). It is irrelevant whether or not BG&S obtained information during the course of their representation of Mr. Sabatino that was, or could have been, used in the course of their representation of the Debtor. Regardless of any actual detriment, Mr. Sabatino was entitled to freedom from apprehension and to certainty that his interests would not be prejudiced by BG&S's representation of the Debtor. Id.

BG&S's actions in turning over Mr. Sabatino's case to the Lieber and Gary firm and later withdrawing as attorney for the Trustee show that BG&S knew their simultaneous representation of the Debtor and Mr. Sabatino colored the independence and impartial attitude required of attorneys by New York's Code of Professional Responsibility and the Code. "The standards of the profession exist for the protection and assurance of the clients and are demanding; an attorney must avoid not only the fact, but even the appearance of representing conflicting interests." Id.

Further, the testimony of the Debtor and Mr. Sabatino at trial shows that BG&S never obtained their consent to the dual representation. The Debtor testified that no one from BG&S informed her that there may be a conflict of interest at the start of the representation. (Tr. 40:13-18).[2] Mr. Sabatino testified that, at the initial meeting he and the Debtor had with an attorney from BG&S, the attorney told him privately that there could possibly be a conflict of interest. (Tr. 69:13-70:6; 73:24-74:3). In any event, it is clear that BG&S did not fully disclose the pros and cons of simultaneous representation to the Debtor and Mr. Sabatino and therefore did not satisfy the requirements of DR 5-105(c).

---

[2] "Tr." refers to the transcript of the trial held on January 31, 2005.

The fact that, two months after undertaking the improper dual representation of the Debtor and Mr. Sabatino, BG&S referred Mr. Sabatino to other counsel, does not cure BG&S's violation of DR 5-105(a).  "After an actual conflict of interest has arisen, an attorney will often seek to end his or her representation of one client to avoid violation of the Code of Professional Responsibility DR 5-105(a).  However, 'an attorney who undertakes the joint representation of two parties in a law suit [should] not continue as counsel for either one after an actual conflict of interest has arisen'...since continued representation of either plaintiff would necessarily result in a violation of an attorney's fiduciary obligations of preserving his or her client's confidentiality, as well as the duty to pursue a client's interests vigorously."  Shaikh et al. v. Waiters, 710 N.Y.S.2d at 877 (citations omitted).

Accordingly, this Court finds that BG&S violated DR 5-105 through their simultaneous representation of the Debtor and Mr. Sabatino, and their continued representation of the Debtor after Mr. Sabatino was referred to other counsel.

Disclosure Requirements Under Bankruptcy Rule 2014

To enable parties in interest, and the Court, to determine whether an attorney has a conflict of interest, Bankruptcy Rule 2014 and Local Bankruptcy Rule 2014-1 require an attorney whom the trustee seeks to employ to file an affidavit in which such attorney certifies that he or she does not hold or represent an interest adverse to the estate except as specifically disclosed therein.

Bankruptcy Rule 2014 disclosure requirements are strictly construed.  In re Leslie Fay Cos., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994), citing Rome v. Braunstein, 19 F.3d 54, 59 (1st Cir.1994); In re Arlan's Dep't Stores, Inc., 615 F.2d 925, 933 (2d Cir. 1979) (decided under

8

substantially similar predecessor to Bankruptcy Rule 2014). All facts that may have any bearing on the disinterestedness of a professional must be disclosed. In re Leslie Fay Cos., 175 B.R. at 533. It is the responsibility of the professional, not the court, to make sure that all relevant connections have been brought to light. Id., citing Rome v. Braunstein, 19 F.3d at 58-60; In re Glenn Electric Sales, 99 B.R. 596, 599 (D.N.J. 1988); Diamond Lumber, Inc. v. Unsecured Creditors' Committee (In re Diamond Lumber, Inc.), 88 Bankr. 773, 776 (N.D.Tex. 1988). The duty of disclosure is so important that the failure of an attorney to disclose all of his or her relevant connections is an independent basis for the disallowance of fees. In re Leslie Fay Cos., 175 B.R. at 533, citing Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.), 655 F.2d 463, 469 (2d Cir. 1981); In re Arlan's, 615 F.2d at 933; Rome v. Braunstein, 19 F.3d at 59; In re Granite Sheet Metal Works, Inc., 159 B.R. 840, 847 (Bankr. S.D.Ill. 1993); In re Envirodyne Industries Inc., 150 B.R. 1008, 1021 (Bankr. N.D.Ill. 1993); see also In re Fretter, Inc., 219 B.R. 769 (Bankr. N.D. Ohio 1984) (holding that while appropriate sanctions may vary, in the court's discretion, denial of all fees is required when an attorney willfully disregards the fiduciary obligations under the disclosure rules).

It is clear that BG&S did not comply with the disclosure requirements of Bankruptcy Rule 2014. At trial, Mr. Shields testified that he had not reviewed any retainer agreements entered into by his firm in connection with this case prior to signing the affirmation submitted with the Trustee's application to retain BG&S as special counsel to the Trustee, and therefore was not aware that BG&S had represented Mr. Sabatino. (Tr. 111:2-13). Further, Mr. Shields testified that he did not know what the term "disinterested" meant under the Code. (Tr. 117:11-23). Mr. Shield's failure to properly review his firm's files and his unfamiliarity with the Code

does not excuse BG&S from the disclosure requirements of Rule 2014. In re Park Helena Corp., 63 F.3d 877 (9th Cir. 1995) cert denied 516 U.S. 1049, 116 S. Ct. 712, 133 L. Ed. 2d 667 (1996) (even a negligent or inadvertent failure to disclose a connection with a party in interest may result in a denial of all requested fees).

## BG&S's Assertion of a Charging Lien

New York law grants attorneys a charging lien on the proceeds of a judgment or settlement reached in favor of their client. NY CLS Jud §475. The charging lien of an attorney under §475 comes into being at the commencement of an action or proceeding. In re Brooklyn Bridge Southwest Urban Renewal Project, 31 App. Div. 2d 895, 297 N.Y.S.2d 835 (1st Dept. 1969). A charging lien is based upon an equitable doctrine that an attorney should be paid out of proceeds of a judgment procured by him. Theroux v Theroux, 145 App. Div. 2d 625, 536 N.Y.S.2d 151 (2d Dept. 1988).

Section 475 of the New York Judiciary Law is enforceable by federal courts. Itar-Tass Russian News Agency v. Russion Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998). An attorney is not entitled to a charging lien in cases in which he or she is discharged with cause. Artache v Goldin, 173 App. Div. 2d 667, 570 N.Y.S.2d 238 (2d Dept. 1991) (holding that if an attorney is discharged without cause, he is entitled to a charging lien for the reasonable value of his services rendered prior to the date of the substitution of counsel where (1) his representation was entirely competent and successful up until his discharge, (2) any potential conflict of interest was disclosed and the plaintiff chose to continue to be represented by the attorney, and (3) the discharge of the attorney occurred solely because of a fee dispute); K.E.C. v. C.A.C., 173 Misc.2d. 592, 599-600, 661 N.Y.S.2d 715, 721 (Sup. Ct. Kings Cty 1997) (holding that in the

absence of compliance with the Code of Professional Responsibility, a charging lien will not be granted), citing Matter of Cooperman, 83 N.Y.2D 465, 633 N.E.2d 1069 (1994).

BG&S is not entitled to a charging lien in this case. BG&S withdrew its representation of the Trustee on the eve of the trial of the Debtor's personal injury action because of their belated realization that the firm had a disqualifying conflict of interest. Had BG&S disclosed the firm's conflict of interest to the Trustee and not withdrawn from representation of the estate, the Trustee would have discharged the firm, with cause. (Doc. 26, p 9).[3] BG&S's failure to recognize its conflict of interest sooner was due either to the firm's inattention to or unfamiliarity with the New York Code of Professional Responsibility and the rules of this Court. Neither excuse would mitigate BG&S's conduct or entitle them to a charging lien for any services rendered to the Debtor or the estate prior to the firm's resignation.

Sanctions

BG&S violated New York Code of Professional Responsibility DR 5-105(a) and (b) by representing the Debtor and Mr. Sabatino, clients with differing interests, in the same personal injury action. "It is well settled that '[a]n attorney who engages in misconduct by violating the Disciplinary Rules is not entitled to legal fees for any services rendered.'" Pessoni v. Rabkin, 633 N.Y.S.2d at 1339, citing Matter of Winston, 214 A.D.2d 677; 625 N.Y.S.2d 927 (2d Dept. 1995); Shelton v Shelton, 151 A.D.2d 659; 542 N.Y.S.2d 719 (2d Dept. 1989); Brill v. Friends World Coll., 133 A.D.2d 729; 520 N.Y.S.2d 160 (2d Dept. 1987). Accordingly, BG&S is not entitled to any fees for services rendered to the Debtor pre-petition.

---

[3] Doc." refers to documents listed on the bankruptcy court's docket, by docket number.

This Court has broad latitude to sanction an attorney who violates Bankruptcy Rule 2014's disclosure rules. In re Leslie Fay Cos., 175 B.R. at 538, citing In re Kelton Motors, 109 B.R. 641, 654 (Bankr. D.Vt. 1989); In re Iorizzo, 35 B.R. 465, 468-69, (Bankr. E.D.N.Y. 1983). BG&S's negligence in submitting an affidavit to this Court that contained affirmations that they had not made reasonable efforts to ensure were correct is inexcusable and justifies a denial of fees and expenses for services rendered to the estate post-petition.

For the foregoing reasons, BG&S's objection to the payment of the full contingent fee to the Lisabeth Firm is overruled.

## Conclusion

The trustee is directed to settle an order and judgment consistent with the foregoing and awarding fees and expenses to the Lisabeth Firm.

Dated: Brooklyn, New York
       July 11, 2005

                                              *s/Carla E. Craig*
                                              CARLA E. CRAIG
                                              United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                                    Case No. 03-26651-608

MICHELE BRUNO,                                              Chapter 7

                                                Debtor.
-----------------------------------------------------------x

## MAILING CERTIFICATE

        I, Vivian Greene, Judicial Assistant to the Honorable Carla E. Craig, hereby affirm that on July 11, 2005 a copy of an Order was delivered to the parties named below by United States Postal Service first class mail, telecommunication, facsimile or any other delivery method, as follows:

| | |
|---|---|
| Richard J. McCord<br>Certilman Balin Adler & Hyman<br>90 Merrick Avenue<br>East Meadow, New York 11554 | John H. Shields<br>97-45 Queens Boulevard<br>Suite 1116<br>Rego Park, New York 11374 |
| Breadbar Garfield & Schmelkin<br>11 Park Place<br>New York, New York 10007 | |

Dated: Brooklyn, New York
       July 11, 2005

                                                    *s/Vivian Greene*
                                                      Vivian Greene